**Jeffery Lincoln FARRAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–84–336–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 7, 1985.

Will Gray, Houston, for appellant.

Calvin A. Hartmann, Eleanor Montague McCarthy, Jim Peacock, Asst. Dist. Attys., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

OPINION

ELLIS, Justice.

Appellant, Jeffrey Lincoln Farrar, appeals from a judgment of conviction for the offense of murder. Appellant entered a plea of not guilty. The jury found appellant guilty and assessed punishment at confinement in the Texas Department of Corrections for life. We affirm.

Appellant brings three grounds of error. In ground of error one, appellant asserts that he was denied a fair trial because of the ineffective assistance he received from his counsel. Appellant asserts in his second ground of error that he was denied a fair trial because of the concerted misconduct of the prosecutor. In his third and final ground of error, the appellant asserts that he was denied a fair trial because of the combined ineffectiveness of his counsel and the concerted misconduct of the prosecutor.

On August 22, 1983, the decedent, John Partida, was at Todd's club, with friends, Anthony Mata, Joseph Balboa, his brother, Albert Partida and two female companions. While the decedent was dancing with one of the females, an altercation erupted between the deceased and the appellant who was sitting near the dance floor. The decedent tried to kick the appellant and missed and then the two men began pushing and shoving each other until they were separated by bystanders and club employees. Both men were asked to leave the club and the appellant was escorted outside.

Shortly thereafter, the deceased left the club with the two females while club employees held the appellant outside the club. When released, the appellant walked around the club parking lot, then got in his truck and began driving up and down the aisles of the parking lot.

Mata and Balboa left the club and as they walked to their car, they saw the decedent's brother, Albert Partida, leaving the club. The appellant drove up to the decedent's brother, stopped the truck and exited swinging a wrench. The appellant hit Albert Partida in the head with the

wrench. When Balboa came to Albert Partida's assistance, the appellant went after Balboa with the wrench. Albert Partida jumped into the bed of appellant's truck, picked up a cinder block and threw it through the appellant's truck window, breaking the glass. During the course of the fight, Albert Partida threw a cinder block at the appellant and missed.

Albert Partida got a ride home to the apartment he shared with his brother, the deceased, leaving his own vehicle behind. A short time later, the deceased, who had returned to his apartment complex, took his brother, Albert, back to the parking lot of Todd's so Albert could retrieve his truck. Albert's truck would not start so they decided to leave and come back the next day to pick it up. As the Partida brothers were leaving the parking lot, they noticed the appellant following them in his truck. In trying to lose him, the deceased, who was driving, turned his car into an apartment complex and pulled into a car port. The appellant pulled behind the Partidas, blocking their vehicle.

The appellant exited his truck and approached the driver's window waving a gun. The Partidas were unarmed. Albert Partida jumped out of the car and ran to Todd's to call the police. The appellant fired several shots into the car, killing John Partida. The appellant left the scene of the crime in his truck and drove to his girlfriend's house. Early the next morning the police came to Flora Moody's house and arrested the appellant. The appellant gave his pistol to the arresting officer and it was later identified by a ballistics expert as the murder weapon.

In his first ground of error, the appellant alleges he was denied a fair trial because of ineffective assistance of counsel. In his brief appellant contended that his trial counsel committed unspecified "acts and omissions" that cannot be "remotely ... classified as legal or tactical maneuvers" which "combined to bolster the testimony of ... the State's major witnesses." The appellant further alleged, without specification or citation to the record, that his counsel "displayed a marked ignorance of the prejudice ... that resulted from the prosecutor's continued misconduct."

The Texas Code of Criminal Procedure requires that appellant's brief shall set forth separately each ground of error of which the appellant desires to complain on appeal and may set forth such arguments as he deems appropriate. Each ground of error shall briefly refer to that part of the ruling of the trial court, charge given to the jury or charge refused, admission or rejection of evidence, or other proceedings which are designated to be complained of *in such a way so that the point of objection can be clearly identified and understood by the court.* Tex. Code Crim. Proc.Ann. art. 40.09 § 9. The appellant's argument does not call the court's attention to any portion of the record so that the action complained of may be identified. The appellant's argument merely consists of conclusory statements that his trial counsel rendered ineffective assistance of counsel. As appellant's ground of error is not in compliance with Article 40.09 § 9, *supra,* nothing is presented for review. *Bridges v. State,* 624 S.W.2d 718, 719 (Tex. App.—Houston [14th] 1981), *Bell v. State,* 620 S.W.2d 116, 126 (Tex.Crim.App.1980). However, in the interest of justice, we will look more closely at appellant's complaints.

In the statement of facts section of appellant's brief, he refers to certain acts and/or omissions by defense counsel that he considered improper. Appellant points to an ex parte discussion that took place between the judge and the prosecutor. At the conclusion of the appellant's direct testimony the court recessed for lunch. At that point the prosecutor said. "Your Honor, I have some information that I would like to inform the Court of outside the presence of counsel. I believe that something should be heard in camera. May I approach the bench for that purpose so you can tell me if it would be appropriate for counsel to be informed." This was followed by a side bar discussion between the judge and the prosecutor. There is nothing in the record to show what the discussion

was about. Appellant alleged that the defense counsel made no effort to determine the purpose of this side bar conference. One additional incident alluded to by appellant was an untimely objection by defense counsel concerning appellant's acquisition of the gun.

The appellant testified that at the time of the shooting he was employed as a security guard. He had received training "for handguns and weapons" and was commissioned as an officer to carry a handgun. He went to Todd's at 8:00 p.m. to have a drink before he went to his girl friend's (Flora Moody) house. The club was very crowded so he sat on a platform separating the two dance floors.

About nine o'clock he testified that he called Flora to bring his uniform, his bag, and his briefcase which contained his pistol and to join him at the club. He had decided to stay at his sister's house that night because it was closer to his security assignment. He then went back to the platform and sat down. Appellant further testified that a Mexican male and a female were dancing almost directly in front of him. As the woman was dancing she smiled at the appellant and he smiled back. A few seconds later the Mexican male started walking toward the appellant, "looking very violent." As appellant got up the man kicked him in the chest. Thus the altercation erupted.

On cross-examination the prosecutor tried several times to coerce appellant into admitting that he did not call his girl friend until after the altercation had occurred and damage had already been done to his truck. He asked the appellant if he had ever told anybody that he called Flora Moody and told her to bring him his gun after his truck had been damaged. The appellant denied this assertion. Appellant testified that he called Flora Moody before the altercation started inside the club.

The prosecutor persisted: "So, if anyone were to say that you had told them that you called Flora Moody after the damage was done to your truck, just called your girlfriend and told her to bring you your gun at that point in time, if they were to say you said that, would they be lying?"

After a number of different questions, the prosecutor returned to the same unsubstantiated allegations: "Isn't it a fact that you didn't call her until after the fight in the parking lot, and you called her to bring you your gun?" Appellant denied this allegation. The prosecutor continued: "And if you would tell anybody that before that, they'd be mistaken about what did happen, is that correct?" Defense counsel finally objected by saying that the appellant had already answered that question.

We agree that defense counsel should have inquired about the subject matter of the ex parte discussion between the judge and the prosecutor. We also agree that defense counsel could have objected to the prosecutor's repetition of the same allegation. However, we do not find that these two isolated incidents constitute ineffective assistance of counsel especially in light of the standards set by the courts.

In gauging the sufficiency of an attorney's representation, the court must look at the totality of that representation. *Ewing v. State*, 549 S.W.2d 392 (Tex.Crim.App. 1977), and find not errorless counsel but "reasonably effective" counsel. *Williams v. State*, 549 S.W.2d 183 (Tex.Crim.App. 1977).

In the Supreme Court case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 674 (1984), the Supreme Court enunciated a two-pronged test to determine whether counsel was ineffective in his assistance at trial. To paraphrase, the defendant must first show that counsel's performance was deficient, i.e., that his assistance was not "reasonably effective." Second, and assuming the defendant has first shown ineffective assistance, the defendant must affirmatively show prejudice. That is, the defendant must show a reasonable probability *but for* counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in

the outcome. *Ingham v. State,* 679 S.W.2d 503 (Tex.Crim.App.1984).

■ Indeed, judicial scrutiny of counsel's performance must be highly deferential, and every effort made to eliminate the distorting effects of hindsight. *Strickland, supra,* 104 S.Ct. at 2065. An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel. *Weathersby v. State,* 627 S.W.2d 729 (Tex.Crim.App.1982); *Cude v. State,* 588 S.W.2d 895 (Tex.Crim.App.1979).

■ Upon review of the totality of the representation, we hold that the appellant has failed to demonstrate that his trial counsel's actions amounted to ineffective assistance. The record reflects that appellant's counsel filed numerous pre-trial motions, including: a Motion for Production of Witness Statements, Motion for Evidence Favorable to the Defendant and Supporting Memorandum, Motion to Arraign Accused Outside the Presence of the Jury, Motion for the Court to Direct the Court Reporter to Record Specified Testimony, Motion for Discovery and Inspection and supporting the memorandum, Motion for Discovery of Arrest and Conviction Reports of Witnesses, and Motion for Probation. Counsel conducted a thorough voir dire examination, conducted a vigorous and extensive cross-examination of each of the State's eleven witnesses, and presented the testimony of five witnesses at the guilt/innocence stage of the trial and eight witnesses at the punishment stage. Counsel submitted eight requested jury charges to the court and argued effectively at both stages of the trial. Finally, counsel made valid objections throughout the trial which were sustained by the court.

■ The standard by which the appellate courts judge the performance of counsel is whether the appellant was afforded "reasonably effective assistance." *Mercado v. State,* 615 S.W.2d 225 (Tex.Crim.App.1981). Such a standard necessitates a comparison of the total representation afforded the appellant rather than a dissection of isolated failures by counsel. *Archie v. State,* 615 S.W.2d 762 (Tex.Crim.App.1981); *Johnson v. State,* 614 S.W.2d 148 (Tex.Crim.App. 1981).

This Court cannot "second guess" counsel's strategy decisions in the sense of determining whether they were wisely made. *Passmore v. State,* 617 S.W.2d 682 (Tex.Crim.App.1981). The wisdom of a trial tactic is not for the court to judge since the court does not inquire into such matters unless from all appearances there is no plausible basis in strategy or tactics for counsel's actions. *Johnson v. State,* 614 S.W.2d 148 (Tex.Crim.App.1981). We find that the appellant was afforded effective assistance of counsel. We overrule appellant's first ground of error.

■ In his second ground of error appellant alleges that he was denied a fair trial due to prosecutorial misconduct. This ground of error is not in compliance with Article 40.09(9), *supra* as it does not contain citations to the record. Nothing is presented for review. *Bell v. State,* 620 S.W.2d 116 (Tex.Crim.App.1980). However, in the interest of justice we will address appellant's complaint.

In the statement of facts section of appellant's brief he mentions a few incidents that he alleges constitute prosecutorial misconduct. The appellant complained of the prosecutor's questioning of witness McCall, arguing that the prosecutor, orchestrated witness McCall's purported 'terror' at having her address revealed. The defense attorney objected to this questioning and the objection was sustained. However, the appellant failed to request an instruction to disregard, or a mistrial, therefore, no error was preserved. *Duran v. State,* 505 S.W.2d 863, 866 (Tex.Crim.App.1974).

■ When the prosecutor again mentioned McCall's fear of the appellant during jury argument, the appellant did not object. No error is preserved for review in the

absence of an objection in the trial court. *Sanchez v. State*, 589 S.W.2d 422 (Tex. Crim.App.1979). Assuming that the argument was improper, the question becomes whether it was so prejudicial that an instruction to disregard would not have cured the harm. *Romo v. State*, 631 S.W.2d 504 (Tex.Crim.App.1982). We find that had the appellant objected and obtained an instruction to disregard, any harm would have been cured. *Thomas v. State*, 693 S.W.2d 7 (Tex.App.—Houston [14th Dist.] 1985).

■ Appellant next contends that the prosecutor improperly elicited testimony regarding the appellant's refusal to cooperate with the police who came to the scene to investigate the damage done to appellant's truck. The State elicited testimony from officer Goodfellow that when he offered to make an offense report for the appellant regarding the criminal mischief inflicted upon his vehicle, the appellant refused, saying " 'f—— no' ", he was going to "handle it myself.' " The appellant did not object to this line of questioning, therefore he waived error, if any. *Crocker v. State*, 573 S.W.2d 190, 205 (Tex.Crim.App.1978). We find that this testimony was proper to indicate the sequence of events leading to the murder and contrary to the appellant's assertion did not imply that the appellant had a criminal record. We overrule the appellant's second ground of error.

In his third ground of error appellant alleges that he was denied a fair trial because of the combination of ineffective assistance of counsel and prosecutorial misconduct. After reviewing the record and the alleged instances of the combination of ineffective assistance of counsel and prosecutorial misconduct we find that appellant was not denied a fair trial pursuant to the Texas Constitution and The Constitution of the United States. We overrule appellant's third ground of error.

Accordingly, the judgment of the trial court is affirmed.